1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

11 ANTHONY HILL,                                    CASE NO. 09cv1327-LAB (CAB)

12                              Petitioner,          **ORDER ADOPTING REPORT
                                                     AND RECOMMENDATION, AND**
13         vs.                                       **DENYING PETITION FOR WRIT
                                                     OF HABEAS CORPUS**
14 DOMINGO URIBE, Warden,

                                  Respondent.
15

16        Anthony Hill, a prisoner in state custody, proceeding *pro se*, filed his petition for writ

17 of habeas corpus in this Court on June 18, 2009.  Pursuant to 28 U.S.C. § 636 and Fed. R.

18 Civ. P. 72, the petition was referred to Magistrate Judge Cathy Bencivengo for a report and

19 recommendation.

20        After receiving briefing, Judge Bencivengo on May 18, 2010 issued her report and

21 recommendation (the "R&R"), noting that the petition was possibly time-barred but

22 recommending the simpler approach of denying it on the merits.  Hill then filed objections

23 to the R&R.

24 **I.    Legal Standards**

25        A district court has jurisdiction to review a Magistrate Judge's report and

26 recommendation on dispositive matters.  Fed. R. Civ. P. 72(b).  "The district judge must

27 determine de novo any part of the magistrate judge's disposition that has been properly

28 objected to." *Id*.  "A judge of the court may accept, reject, or modify, in whole or in part, the

1 findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  The

2 Court reviews de novo those portions of the R&R to which specific written objection is made.

3 *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).  "The statute

4 makes it clear that the district judge must review the magistrate judge's findings and

5 recommendations de novo *if objection is made*, but not otherwise."  *Id*.

6 **II.    Discussion**

7       In the early morning hours of July 14, 2002, two male Swedish tourists were robbed

8 in a restroom in the boardwalk area in San Diego's Mission Beach neighborhood.  The

9 evidence showed a man matching Hill's description approached the two tourists, asking them

10 to buy sexual favors from two women he was with.  The tourists then went into a public

11 restroom, where the man robbed them at gunpoint, forced them to undress, and shot one

12 in the knee.  After dressing, the victims made their way across the street to an open

13 restaurant, where a youth called police.

14       At trial, both victims identified Hill as the robber.  Hill challenged the reliability of these

15 identifications.  Hill's uncle had been called as an alibi witness, but his testimony left a 4- to

16 5-hour window in which Hill could have committed the crime.  While on the stand, Hill's uncle

17 also identified one of the two women as Hill's wife.

18       **A.    Timeliness**

19       Although Respondent raised untimeliness as a defense, the R&R recommended

20 deciding the petition on the merits, finding the merits more easily resolved than the question

21 of timeliness.[1]   *Pough v. United States*, 442 F.3d 959, 965 (6th Cir. 2006) (holding that a

22 federal court may deny a habeas petition on the merits if the timeliness issue is complex).

23 _____

24       [1] Apparently, this was because Hill brings an "actual innocence" claim.  At the time
the R&R was issued, it was unclear whether such a claim could rescue otherwise time-
25 barred claims based on alleged constitutional violations.  After the R&R was issued,
however, the Ninth Circuit issued its decision in *Lee v. Lampert*, 610 F.3d 1125 (9th Cir.
26 2010), holding that claims of actual innocence could not serve as a gateway through which
otherwise time-barred claims could be brought.  Furthermore, actual innocence claims
27 themselves are subject to AEDPA's time limits.  *Souliotes v. Evans*, 622 F.3d 1173, 1177
(9th Cir. 2010); *see especially id*. at 1181–82 (remanding petitioner's actual innocence claim
28 for evidentiary hearing to determine the triggering date under 28 U.S.C. § 2244(d)(1)(D)).

But in view of later Ninth Circuit rulings clarifying the law, the Court believes the timeliness issue is more easily resolved than before, and reaches it now.  Hill didn't object to the R&R's findings concerning the procedural history, and the Court finds them to be consistent with the lodgments.  The R&R's recitation of the procedural history is therefore **ADOPTED**.

Hill's conviction became final on April 20, 2005, when the California Supreme Court, *en banc*, denied appellate review.  He then embarked on a series of successive habeas petitions in the California courts.  The first two of these raised the "actual innocence" claim (based on the discovery of three witnesses whose testimony he now argues would exonerate him).  In this process, he filed a petition in the California Court of Appeal, but on June 19, 2006 he filed a request to withdraw it.  The Court of Appeal granted that request on June 29, 2006, and the petition was dismissed.  (Lodgment 13.)  Hill then waited over 17 months before filing his next petition on December 3, 2007.  (Lodgment 14.)  That petition was denied in a relatively brief order finding no merit.  (Lodgment 16.)

A month after that denial, he began his third round of state habeas review by filing a petition in the California Court of Appeals.  That petition, was denied both on the merits and as untimely.  (Lodgment 18 at 2.) The California Supreme Court denied his next petition, apparently without comment.  (Lodgment 20.)  He then embarked on his fourth round of state habeas review by filing a petition in the California Court of Appeals.  This again was denied both on the merits and as untimely.  (Lodgment 22 at 1.)

Because Hill didn't file his petition in this Court until June 18, 2009, it is late by over three years unless tolling applies.  Under AEDPA, the limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(2).  From June 29, 2006 to December 3, 2007, Hill had no petition pending in state court.  Petitioners who pursue their habeas petitions in the California courts are entitled to "gap tolling" (also known as "interval tolling") between the denial of relief by a lower court and the filing of a petition in a higher court, but only if the later petition is filed within a "reasonable time."  *Maxwell v. Roe*, ___ F.3d ___, 2010 WL 4925429 at *5 (9th Cir., Nov.

1  30, 2010) (citing, *inter alia*, *Evans v. Chavis*, 546 U.S. 189, 192–93 (2006)).   Although

2  California has not specified what a "reasonable time" is*, Evans* at 198, far shorter delays

3  have been determined to be unreasonable.  *See, e.g., Banjo v. Ayers*, 614 F.3d 964, 969

4  (9th Cir.2010) (holding that a petitioner's delay of 146 days between filing of petitions was

5  "plainly" unreasonable).  Hill's delay of over a year and five months is plainly unreasonable.

6  Even if AEDPA's limitations period was tolled up to that point, it expired during that 17-month

7  interval.

8       It is also clear that in permitting Hill to withdraw his petition, the Court of Appeals was

9  not tolling, staying, or extending time in any way.  *Compare Rogers v. Giurbino*, 2007 WL

10  2873712 at *3–*4 (S.D.Cal., Sept. 28, 2007) (rejecting petitioner's argument that he was

11  entitled to tolling between rounds of habeas review after he voluntarily withdraw his first

12  petition).  Later rulings by the state courts finding the petition untimely confirm this.  Hill's

13  petition is therefore time-barred and must be denied for this reason.

14       Although Ninth Circuit precedent requires that the petition be denied on this basis, it

15  is possible that jurists of reason might disagree that claims of actual innocence can be time-

16  barred.  *See Pringle v. Runnels*, 2011 WL 291181 at *3 (S.D.Cal., Jan. 25, 2011) (citing *In

17  re Davis*, 130 S.Ct. 1, 1 (2009) and *Osborne v. Dist. Attorney's Office*, 521 F.3d 1118, 1140

18  (9th Cir. 2008)).  The Court will therefore also address the merits of Hill's actual innocence

19  claim.  If that claim clearly lacks merit, reasonable jurists would agree the petition as a whole

20  is also time-barred.

21       **B.    Actual Innocence Claim**

22       As discussed in the R&R, this claim was presented to the California Court of Appeals

23  and the California Supreme Court, and rejected by both, although only the Court of Appeals

24  issued an order accompanied by reasoning.  (R&R, 28:3–6.)  That court considered and

25  rejected Hill's claim of actual innocence, finding the new evidence "might have weakened

26  the prosecution case or presented a more difficult question for the jury," but didn't show he

27  was innocent. (Lodgment 18 at 5.)   That decision also found the three witnesses'

28  declarations "facially defective."  (*Id*. at 4.)

1    The Court is required to accept the determination of a factual issue made by a state

2    court, unless the petitioner can rebut "the presumption of correctness by clear and

3    convincing evidence." 28 U.S.C. § 2254(e)(1).  Here, Hill hasn't provided any additional

4    evidence, but has simply argued the state court's assessment was unreasonable.  (Obj. to

5    R&R, 6:11–7:4.)  Specifically, he argues that the three witnesses could logically have known

6    who actually committed the shooting and robbery (*id*., 6:14–17); that the witnesses saw

7    every possible suspect leave the restroom after the shooting and robbery, none of whom

8    was Hill (*id*., 6:16–20); and that all three witnesses had a conversation with a man in a white

9    jumpsuit (not Hill), whom they would testify committed the shooting and robbery.  (*Id*.,

10   6:21–24.)

11   Hill hasn't included the proposed evidence, but he did attach it to many of his state

12   court pleadings.  Not all of these are complete or paginated, so for convenience and clarity,

13   the Court will refer to the declarations found in Lodgment 10 (Pet. for Reconsideration filed

14   Oct. 19, 2005), Ex. B, from B-27 to B-30, B-37 to B-41, and B-25 to B28.[2]

15   The three proposed witnesses, Kenneth Bess, Adam Nuno, and Bianca Towne, were

16   friends of a witness who in turn was a friend of Hill and his wife. (Bess Decl., ¶ 8;

17   Nuno/Towne Decl., ¶ 5; Lodgment 2 (trial transcript) at 10:27–11:3, 12:4–11.)  The

18   declaration of Hill's attorney merely characterizes Bess's testimony, which she was proffering

19   to the court.  While the declaration of Bess himself might be admissible, Hill's attorney's is

20   clearly not.

21   All three witnesses claim to have seen and even talked with a man generally similar

22   to Hill at the adjacent beach that day, whom they believed was looking for opportunities to

23   rob people.  All three witnesses also say they saw this man, not Hill, running out of the

24   restroom after the shooting.  Their helpfulness to Hill ends there, however.

25

26
27   [2] Although these declarations are paginated, they are not in the correct order.  The declaration of Kenneth Bess ("Bess Decl.") is first at B-37 to B-41.  This is followed by the joint declaration of Adam Nuno and Bianca Towne ("Nuno/Towne Decl.") at B-25 to B-28.
28   Not all pages in Exhibit B are numbered.

1    Bess's declaration doesn't say what Hill claims it does.  Its factual statements are

2    somewhat contradictory: Although he declares he saw "the guy coming out of the restroom"

3    and knew he was someone who looked like Hill but wasn't, (Bess Decl., ¶ 14), he also says

4    he was at a nearby restaurant when he heard the shot fired. (*Id*., ¶ 12.)  Later, at an

5    unidentified time sometime before October 13, 2003, he says he met Hill for the first time

6    while in a holding tank and, while discussing Hill's case, realized Hill wasn't the shooter that

7    night.  (*Id*., ¶¶ 5, 10.)  The declaration doesn't say how much time elapsed between the

8    shooting and the time Bess first met Hill and concluded he wasn't the shooter.

9        The joint declaration of Nuno and Towne also doesn't say what Hill claims it does.

10   Instead, these witnesses say they saw the man who earlier had been wearing a white

11   jumpsuit enter the restroom with a friend (or with the two victims)[3] and also with two women.

12   (Nuno/Towne Decl., ¶¶ 9, 11.)  Then they mention the shooting, after which the man they

13   believed to be the shooter ran out the back door of the restroom.  (*Id*., ¶ 10.)  They say

14   nothing about seeing anyone else leaving the restroom, which presumably would have

15   included the two women, the other man (if there was a second man), and a little later the

16   victims.  The declaration also gives a description of the shooting victim with no explanation

17   of how the witnesses knew which of the two men had been shot. (*Id*., ¶ 11.)  Though they

18   declare they were "right there when the shooting happened," (*Id*., ¶ 10), it is unclear how

19   close they were and what opportunity they had to observe events.  As with Bess's proposed

20   testimony, the best this testimony can show is that Nuno and Towne believed that someone

21   besides Hill was the shooter.

22       Neither declaration gives basic foundational information, such as how where in

23   relation to the restroom the declarants were, or whether the restrooms were always in their

24   view so that they would have seen everyone who entered or left.  This is an important

25

26       [3] Specifically, the declaration says ". . . I saw this same guy [the man they believed
     was the shooter] go into the bathroom, with his friend and 2 (two) black girls . . . prior to the
27   shooting . . . ."  This sounds as if the shooter, his friend, and two women went in.  But later,
     the declaration says "I only saw the . . . victims go into the restroom . . . ."  Apparently he
28   means he only saw the victims, the two women, and one (or two) men go in.

omission, because Bess says he was at a restaurant across the street from the restroom with his friends when a shot was heard. (Bess Decl., ¶¶ 8, 9, 12, 20.) It is unclear whether Nuno and Towne were also at the restaurant, but he implies they were (*id.*, ¶¶ 2, 8,9) and they are silent on this point.

Both declarations omit information about as how and when the victims left the restroom.[4]  Nuno's and Towne's statement that the women also entered the restroom (Nuno/Towne Decl., ¶ 9), is omitted by Bess and contradicts the record. (*See, e.g.*, Lodgment 2 (trial transcript) at 76:6–7.). Because the declarants' beliefs about the shooter's identity were based on who they saw entering and leaving the restroom, this information would show whether their conclusions were well-founded.

It is also worth noting the declarations appear to disagree on important details.  By way of example, both Bess and Nuno declared they had repeatedly met the other man during the day.  Bess declared the man looked like Hill but was not Hill. (Bess Decl., ¶ 10.) Nuno and Towne declared the man did *not* look like Hill. (Nuno/Towne Decl., ¶ 3.)  Nuno and Towne also say the unknown man had earlier been wearing a white jumpsuit but had put on a bomber jacket before going into the restroom. (*Id.*, ¶ 9.)  Bess merely says the man had on a white jumpsuit. (Bess Decl., ¶ 14.)

The state courts didn't discuss the declarations in detail, except to conclude they were insufficient.  In view of the problems with the declarations, this is not an unreasonable finding.  Hill makes other arguments based on the evidence presented at trial, but the state courts also took this into account and concluded it didn't show he was innocent or even entitled to a new trial.  If the proffered testimony in some way other interlocks with evidence produced at trial to support Hill's claim of actual innocence, he hasn't explained how.  On the

---

[4] The three witnesses' accounts suggest the shooting and the fleeing man were obvious to everyone around.  But the record contradicts this.  The victims' testimony at trial shows the area was generally deserted, and when they had to walk across the street to the only open restaurant nearby (apparently the same one the witnesses were in) to ask for help. (Lodgment 2 at 76:20–77:5; 147:7–149:10.)  They also testified about trying to convince a skeptical restaurant worker there really had been a shooting and they needed the police and an ambulance. (*Id.*)

1  basis of this evidence, the Court cannot say Hill has rebutted the state courts' factual

2  determinations, and is therefore required to accept their determinations as correct.

3  **C.      Other Objections**

4      Because Hill cannot show he is actually innocent, his remaining claims are time-

5  barred.  His objections concerning these other claims are therefore **OVERRULED** as moot.

6  **III.     Conclusion and Order**

7      Hill's objections are **OVERRULED**.  With the modifications mentioned above, the

8  Court **ADOPTS** the R&R.  The petition is **DENIED**.

9

10      **IT IS SO ORDERED**.

11  DATED: February 4, 2011

12

13  **HONORABLE LARRY ALAN BURNS**
United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28