**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

ANTHONY HILL,

Petitioner,

vs.

DOMINGO URIBE, Warden,

Respondent.

CASE NO. 09cv1327-LAB (CAB)

**ORDER FOLLOWING REMAND; AND**

**ORDER CONFIRMING DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Anthony Hill, a prisoner in state custody, filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on June 18, 2009. On February 8, 2011, the Court denied the petition as time-barred. The state courts had rejected Hill's actual innocence claim, but because that claim might not have been subject to AEDPA's time bar, the Court considered and rejected it on the merits as well.

Hill then moved for reconsideration, raising a completely new claim of attorney abandonment. The Court denied the motion, both because this claim was waived, and because it lacked merit. Hill then took an appeal.

On appeal, Hill raised the attorney abandonment issue. During the pendency of appeal, the Ninth Circuit, sitting en banc, reheard *Lee v. Lampert*, 653 F.3d 929 (9th Cir. 2011) (en banc), a case dealing with actual innocence. Respondent, forgetting that the Court had already made a ruling on actual innocence, requested remand to consider the issue. The

panel, apparently surprised by this, noted that this Court had ruled on the issue (*see* Mandate at 3 n.1 (noting that the Court had already decided this issue, and leaving to the Court's discretion whether additional briefing or development of the record was required)), but acceded to Respondent's request.[1] The panel also expanded the certificate of appealability to include the attorney abandonment issue, and the mandate directed the Court to consider this issue in the first instance.[2] The Court now does so.

The Ninth Circuit appointed counsel on appeal, Todd Burns, Esq., who is also representing Hill on remand. Following remand, Burns moved for leave to file all his briefing under seal, which would effectively have prevented Respondent from meaningfully opposing his claims, in violation of Due Process. The Court denied the motion (Docket no. 51), and denied the unauthorized motion for reconsideration both because it was improper and because it lacked merit. (Docket no. 56.)

Burns also sought authorization of funds to conduct an investigation into Hill's actual innocence. The Court received briefing, and denied the request (Docket no. 56), noting that Burns had failed to identify what evidence he expected or sought to discover. The proposed investigation amounted to a "fishing expedition," and that the relevant statute did not permit courts to authorize funds for such purposes. Burns also sought authorization of funds to conduct an investigation into the attorney abandonment issue. But the Court pointed out that Hill already knew the pertinent details of that. Moreover as discussed below, that claim is moot. The Court did, however, expand the record to include evidence of the attorney abandonment issue. (Docket no. 60.)

---

[1] At the mandate hearing, Respondent's counsel explained that because of personnel changes, a new attorney was assigned to the appeal, and did not realize the Court had made this ruling. Counsel further conceded that had they been aware of the Court's ruling, they would not have requested remand on this issue.

[2] Respondent's counsel apparently also failed to inform the panel that the Court determined that this issue was waived. The17-month delay that might have been excused by attorney abandonment was pointed out to Hill in Respondent's answer (Docket no. 16 at 11:18–21, 12:18–26, 14:1–3) and he ignored it in favor of making other arguments (*see* Docket no. 30, 2:4–10), only to seek tolling on the basis of attorney abandonment for the first time on a motion for reconsideration. (*See id*. at 2:11–12 ("Hill's attempt to raise these arguments for the first time in a motion for reconsideration is improper, and for that reason alone would be denied."))

**Actual Innocence**

Burns was ordered to file any evidence or other material on the actual innocence issue that he wished the Court to consider, by October 6, 2014. (Docket no. 60.) While he filed evidence on the attorney abandonment issue, he filed no evidence and almost no argument on the actual innocence issue. (Docket no. 61.) His response addressed only in vague terms the actual innocence claim, arguing again that the Court's refusal to authorize fees prejudiced him. (*Id*., at 2:7–11.)

Burns has been treating the potential "innocence" evidence as a secret, and hinting at it only vaguely in his pleadings. But the Court has already ruled on the secrecy issue several times, so it should be clear that any issues he raises may be discussed openly in public rulings. This is not a trial, where a defendant's trial rights might be compromised by disclosing information about potential witnesses or evidence. Hill had his trial many years ago, and is not facing any new prosecution. This is a collateral attack on a conviction obtained at that trial. Even if the Court were to seal all the documents Burns submitted on behalf of his client, they would have to be shown to Respondent at some point, in order to give Respondent a meaningful chance to litigate. Allowing Hill to litigate his claims in secret would violate Respondent's Due Process rights, as well as the First Amendment right of access.

Hill has no new evidence, and for reasons the Court has already explained, the evidence falls short of the actual innocence standard. The only potential new evidence he hoped to uncover is the testimony of one witness, Sasha Doxey, a friend of Hill's wife's daughter who was present at the beach. (*See* Docket no. 49.) Hill hoped for funds to locate Doxey and see what information she might have.

But the 2006 declaration Burns submitted (Docket no. 49-1) shows she could be of no help in establishing his innocence. Doxey originally pointed police toward Hill as the man who committed the robbery and shootings, but was unwilling to testify at trial, and although subpoenaed, never did testify. Burns argues that because she was the initial informant, showing that she was unreliable would cause the case against Hill to collapse. In fact, it

makes no difference. Doxey did not testify; Hill was convicted based on other evidence adduced at trial.

Doxey's 2006 affidavit (Docket no. 49-1) says she was drunk on the night of the crime, didn't have a clear view of the lavatory where the two tourists were shot and robbed, doesn't know who committed the robbery and shooting, didn't see Hill or his wife on the beach, and didn't know Hill's name until police mentioned it (although she had seen him and did know him through acquaintances).

None of this shows that the perpetrator wasn't Hill, which is what Hill needs to show. At best, it shows either that police already suspected Hill and prompted her to identify him so they could start investigating him, or else that she by sheer luck fingered Hill as the robber and shooter. Either way, it doesn't negate any of the evidence used to convict Hill, nor render any of it inadmissible. Doxey's identification played no role in Hill's conviction; it merely prompted police to begin investigating him.

Moreover the fact that Doxey was connected with Hill tends to link him to the crime scene, which was a factor in his conviction. Hill had claimed he was with his uncle in Long Beach the entire time, which turned out to be a lie, and was a disaster for Hill at trial. Hill's wife was also present at the scene of the crime, which is yet another link. And three later-discovered alibi witnesses who claimed someone else committed the crime also turned out to be part of Hill's circle of friends.[3] The fact that five people who knew Hill or had some connection to him were present at the scene tends to make it more likely he was there, and less likely he really was somewhere else as he claimed.

The state court's determination that Hill failed to establish actual innocence was reasonable and is entitled to deference. And to the extent this Court is called upon to rule on the issue independently, in order to decide whether Hill has established a freestanding actual innocence claim or for any other reason, Hill has identified no reason why the Court should to depart from its earlier decision. (*See* Docket no. 25, 4:22–8:5, In order to pass through the

[3] Hill submitted their affidavits to the state court, which found they didn't help establish innocence.

"gateway" recognized by *Schlup v. Delo*, 513 U.S. 298 (1995), Hill must show that, in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. *Jones v. Taylor*, 763 F.3d 1242, 1247 (9th Cir. 2014). This standard is far from being met here.

**Attorney Abandonment**

The Ninth Circuit's mandate directed the Court to consider the attorney abandonment issue and make a determination in the first instance.

Hill bears the burden of showing he is entitled to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 649 (2010). To do this, he must establish that he has been pursuing his rights diligently, and that some "extraordinary circumstance" prevented him from timely filing. *Id*. Attorney negligence, ignorance, or inadvertence is not an "extraordinary circumstance." *Id.* at 651–52; *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

Ordinarily, petitioners are bound by their attorneys' errors, because attorneys are their agents. *Rudin v. Myles*, 766 F.3d 1161, 1172 n.15 (9th Cir. 2014) (citing *Maples v. Thomas*, 132 S.Ct. 912, 922 (2012)). Attorney abandonment severs the agency relationship such that the attorney's omissions can no longer be fairly attributed to the petitioner. *Id*. For Hill to establish attorney abandonment, he must show that the agency relationship was severed. But to show entitlement to tolling because of this, he must still show he acted diligently on his own behalf. In *Maples*, the Supreme Court explained that a litigant could not " be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him." 132 S.Ct. at 924. The corollary of this, of course, is that if he had reason to believe his attorney was not representing him, or even affirmatively knew his attorney was no longer representing him, his obligation to act diligently on his own behalf would resume. Or, put another way, the real question is whether Uebbing abandoned Hill without notice. *See id*. at 922 (explaining that although attorney negligence does not excuse late filings, "[a] markedly different situation is presented . . . when an attorney abandons his client without notice . . .").

/ / /

**Hill's Evidence**

The Court directed Burns to file Hill's declaration, as well as any other material he believed the Court should consider in connection with the attorney abandonment or actual innocence issues. (Docket no. 60.) He filed only Hill's declaration. (Docket no. 61.) The Court likewise told Burns that if he wanted to request a hearing on this issue, he had to do so by October 6, 2014. (Docket no. 60.) In his response, Burns said he did not think a hearing was necessary, and made no request for one, though he did offer to answer any questions the Court might have, either in writing or at a hearing.[4] (*Id*.)

After Mr. Uebbing began representing Hill, he determined that the petition Hill had filed and moved to withdraw it. The request was granted on June 29, 2006, kicking off the 17-month gap. According to Hill, months passed with Uebbing giving him various explanations of why he had not yet filed a petition. Over the summer of 2007, the attorney-client relationship began to break down and in July they quarreled about the case and about money. (Hill Decl. (Docket no. 61-1), ¶¶ 19–20.)

Then on August 5, 2007, Hill wrote to Uebbing, telling him that if he did not respond by the end of the month, Hill would inform the court that Uebbing had abandoned him. (Hill Decl., ¶ 21.) Hill says his intent was to spur Uebbing into action. (*Id*.) Although Hill mentions a different letter to Uebbing being returned, he never mentions either that this one was, or that Uebbing ever responded to it. (*Id*., ¶¶ 22–23.) He also asked his sister to send Uebbing a letter by certified mail; she did so on August 6, but it was returned as undeliverable. (*Id*., ¶ 22.) Then on October 24, 2007, Hill's sister filed a complaint with the State Bar. (*Id*., ¶ 23.) Hill says he was "then faced with the problem of re-filing the petition" that had been

---

[4] It is difficult to know what to make of this offer. It may merely have been intended as a courtesy. On the other hand, if he were asking to have the Court notify him if it appeared there were any holes in his case, the request is improper and is denied. The Court's order of August 19, 2014 told the parties that everything needed to decide the issues on remand should be filed in the docket by October 20, 2014. (Docket no. 60, 2:16–18.) The sole exception was any evidence presented at an evidentiary hearing — but that was contingent on Hill requesting such a hearing and the Court granting it. (*Id*., 2:18–19.) This was a directive, not an offer to which the parties were invited to submit counter-offers. Furthermore, granting a contingent request of this kind would require the Court to act one-sidedly on Hill's behalf, by evaluating his evidence for him and, if the evidence is found to be insufficient, prompting him to submit more.

withdrawn. (*Id.*, ¶ 24.) If Hill means that he assumed up until that point he was represented by Uebbing and Uebbing would be filing a petition, his assumption was unwarranted. His unreturned and unresponded-to letter of August 5 shows that as of September 1, 2007 at the outside, he knew or should have known he was proceeding *pro se*.

The story is further complicated by Hill's request that the California Innocence Project (CIP) represent him. He had made this request in January, 2006, about a month before he hired Uebbing. (Hill Decl., ¶¶ 5, 7.) Nearly a year later, in January of 2007, he received a letter from the CIP telling him the CIP would help him with his habeas proceedings. (*Id.*, ¶ 13.) After this, CIP and Uebbing attempted to work together to represent Hill. (*Id.*, ¶¶ 14, 16.) Then in May, 2007, CIP told him they could no longer assist him. (*Id.*, ¶ 18.) Uebbing told Hill he had been waiting for CIP to act before he continued to work on writing the petition, but that he would begin writing it shortly. (*Id.*, ¶ 17.)

Hill's evidence is short on some key details that Hill himself should have been able to supply. First, it raises the possibility that miscommunication between Uebbing and the CIP, or some ordinary negligence on the part of CIP — rather than abandonment by Uebbing — might be the cause of a good part of the delay. (*See* Hill Decl., ¶¶ 13 (mentioning CIP's letter saying they would help with his habeas proceedings), 14 (recounting visit from CIP representative, advising him to allow Uebbing to continue representing him), 16 (summarizing letter in which Uebbing said he would work with CIP), 18 (recounting Uebbing's explanation that he had been waiting for CIP to act).) If Hill ever asked or told CIP and Uebbing which of the two he expected to file his petition and take the lead in his case, his declaration does not say so.

The declaration also mentions a monetary dispute between Hill and Uebbing, without explaining what financial agreement Hill and Uebbing had, or providing facts showing Hill was in the right for refusing to give Uebbing money for an investigator. (Hill Decl., ¶ 19.) This raises the possibility that Hill might have breached the retainer agreement, thereby contributing to or causing much of the delay, and does nothing to explain it away.

/ / /

These omissions cast enough doubt on Hill's claims that, if they were the only problem with his argument, he would have failed to carry his burden. But there is an even more serious flaw.

The declaration makes perfectly clear that from at least early April of 2007, Hill knew Uebbing had not filed a petition. (Hill Decl., ¶¶ 15–16.) The declaration also makes clear they were in regular contact from then through July 25, 2007. Though Hill did not agree with Uebbing's delay in filing a petition, he knew about it and did not remove Uebbing or put an end to the delay himself — such as, for example, hiring new counsel or substituting in *pro se*. *See, e.g., Lawrence v. Florida*, 549 U.S. 327, 337 (2007) (rejecting argument that petitioner was entitled to tolling because inadequate counsel had been forced on him, noting that he was not prevented from hiring different counsel or representing himself). And no external circumstance prevented Hill from taking steps to end the delay. In terms of agency, he acquiesced in or ratified his agent's failure to act. There is no basis for concluding attorney-client or agent-principal relationship was severed, as is required for attorney abandonment. Uebbing's delay in filing a petition might be regarded as negligent, but it does not amount to abandonment.

**AEDPA Timeline**

Even if Hill were entitled to tolling for the entire 17 months he says Uebbing abandoned him, Respondent correctly points out that his petition would still be untimely. (Response (Docket no. 62) at 2:3–6 (citing Docket no. 48 at 6–9).) Hill responded to this argument by claiming that these arguments are untimely, and also beyond the mandate. (*See* Docket no. 55, 4:14–20.) Hill's waiver argument is based on Respondent's failure to make timeliness arguments within the time permitted by then Magistrate Judge Cathy Bencivengo, and Judge Bencivengo's subsequent recommendation that the petition should be denied on the merits rather than on timeliness grounds. But the Court is not bound by a Magistrate Judge's orders or recommendations.. The Court rejected the recommended approach, modified the report and recommendation before adopting it, and decided the case on timeliness grounds.

In addition, *Day v. McDonough* 547 U.S. 198, 210 (2006) makes clear that courts are not required to suppress their knowledge of clear errors in calculating timeliness. Here, the record is clear and the parties both had an opportunity to present their positions. *See id.* at 210 (requiring that parties be given an opportunity to be heard before ruling on timeliness issues).

Furthermore, the possibility that tolling would not salvage Hill's claims raises the specter of mootness. The Court may, and in fact must, raise and address jurisdictional issues at any time. *See Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002).

The California Supreme Court denied Hill's petition for review on April 20, 2005. Under 28 U.S.C. § 2244(d)(1)(A), the limitations period began to run 90 days after the date for filing a certiorari petition, on July 20, 2005. *See Zepeda v. Walker*, 581 F.3d 1013, 1016 (9th Cir. 2009). The record shows Hill filed his first state habeas petition (Lodgment 8) on July 26, which would mean that six days of the 1-year limitations period elapsed. But Hill dated his petition July 9, so the Court's working assumption is that he gets the benefit of the prisoner mailbox rule and his petition was deemed filed earlier. *See Lewis v. Mitchell*, 173 F. Supp. 2d 1057, 1059 (C.D.Cal., 2001) (citing cases for the principle that, in the absence of other evidence, the date a pleading is signed is presumed to be the date the prisoner delivered it to prison authorities, for purposes of the prisoner mailbox rule).  In that case, no time would have elapsed between the time Hill's conviction was final and the time he filed his first habeas petition in state court.

Hill's first petition was filed in the trial court; following the denial of that, he filed a motion for reconsideration, both in fairly close succession. At this point he was proceeding *pro se.* The Court finds he is entitled to gap tolling for these periods. *See Banjo v. Ayers*, 614 F.3d 964, 968 (9th Cir. 2010).

On January 4, 2006, he filed his petition in the California Court of Appeals. On June 19, 2006, Fred Uebbing, Esq., who had substituted in as his counsel, moved to withdraw it, and on June 29, 2006 the petition was dismissed. This was followed by a gap of 17 months, which is the subject of the attorney abandonment argument.

Finally on December 3, 2007, Hill filed a petition in the California Court of Appeals, in which he argued Uebbing had abandoned him. (Lodgment 14 at 6.) Uebbing also submitted a declaration stating that he had not abandoned Hill, but that Hill was refusing to cooperate with him. The petition was denied on March 25, 2008, finding his claims unsupported by facts, law, or any explanation for the basis of his allegations, and citing *People v. Duvall*, 9 Cal.4th 464, 474–75 (1995). (Lodgment 16.) A citation to *Duvall* does not mean the petition was timely, or that the court was reaching the merits. *Gaston v. Palmer*, 417 F.3d 1030, 1038–39 (9th Cir. 2005). Rather, it simply means the petition was procedurally deficient. The order treated Hill as proceeding *pro se*, ruling on his petition but declining to consider a declaration submitted by Uebbing, because Uebbing was not properly substituted in as counsel. March 25, 2008 was to be the last day Hill had an arguably timely petition pending in state court.

Hill then filed another petition in the Court of Appeals on April 25, 2008, which was denied on May 15, 2008 as procedurally barred because it was untimely and cumulative. (Lodgment 18 at 2.)[5] Under AEDPA, a petitioner is entitled to statutory tolling only while a properly filed petition is pending. § 2244(d)(2). A petition denied as untimely does not satisfy the requirements for statutory tolling. *Evans v. Chavis*, 546 U.S. 189, 197 (2006); *Pace v. DiGuglielmo*, 544 U.S. 408, 410 (2005). Although Burns argues otherwise, a petition is untimely if a state court so determines, even if that court also reaches the merits or gives additional reasons for denying the petition. *Carey v. Saffold*, 53 U.S. 214, 226 (2002) (where state court determines petition is untimely, that is "the end of the matter, regardless of whether it also addressed the merits of the claim, or whether its timeliness ruling was 'entangled' with the merits"); *Bonner,* 425 F.3d . at 1148–49 (holding that petition denied in part as untimely was not "properly filed," even if it was also denied on the merits). The result

---

[5] In al likelihood, the denial of this petition as untimely means the previous petition was also untimely. A gap of one month between petitions is ordinarily considered reasonable. So the Court of Appeals must have concluded that once Hill had provided enough facts, argument, and authority to satisfy basic pleading standards, it was clear his petition was late. It is not, however, necessary to reach this issue because the untimeliness of later petitions is clear as a matter of law.

is that no properly filed petition was pending from March 26, 2008 to July 5, 2008, and 102 days of AEDPA's 1-year limitations period ran during this time.

Hill then filed a petition in the California Supreme Court on July 6, 2008 (docketed July 9). The petition raised the attorney abandonment issue (Lodgment 19 at 6), but failed to develop it. (*See id*. at 7–34.) On December 17, 2008, that court denied it without comment. Burns argues this meant the California Supreme Court determined it was timely and reached the merits. But under *Chavis*, this is clearly wrong. *See* 546 U.S. at 197–98 (holding that a silent denial by the California Supreme Court should <u>not</u> be presumed to have been found timely).

*Chavis*, it is true, did hold that in the case of a silent denial the federal court must decide whether the filing of the request for review was made within what California would consider a "reasonable time." 546 U.S. at 198. But that holding pertained to a situation where the petition filed in the California Court of Appeals was timely, and only the timeliness of the petition filed in the California Supreme Court was in doubt. Here, by contrast, the petition filed in the California Court of Appeals was denied as untimely. Where a state court has denied a petition as untimely, the Court must "look through" later unexplained denials and conclude that they found the respective petitions untimely as well. *Bonner v. Carey*, 425 F.3d 1145, 1148 n.13 (9th Cir. 2005), *as amended by* 439 F.3d 993 (9th Cir. 2006) (applying "look-through" doctrine in these circumstances). *See also Hamilton v. Adams*, 533 Fed. Appx. 802, 802–03 (9th Cir. 2013) (citing *Ylst*) (holding that where initial state petition was denied as untimely and meritless, district court correctly "looked through" later unexplained denials to conclude that they were also denied as untimely and meritless).

This means that the petition Hill filed in the California Supreme Court is also deemed untimely, and another 297 days elapsed. Even if AEDPA's one-year limitations period didn't expire during the alleged "attorney abandonment" period, it expired during this time.

Once the California Supreme Court denied his petition on December 17, 2008, Hill waited until March 9, 2009 to file a fourth habeas petition in the state court of appeals. (Lodgment 21; dated by Hill March 9 and docketed March 13.) It was denied as both untimely

and repetitive. (Lodgment 22.) That means from December 18, 2008 and June 15, 2009, Hill had no properly-filed petition pending, and another 179 days elapsed.

Hill filed no more state petitions, but filed his petition in this Court on June 15, 2009 (docketed June 18, 2009). The upshot is that between March 26, 2008 and June 15, 2009, Hill had no properly-filed petitions pending in state court. This far exceeds AEDPA's one-year limitations period. Any possible tolling that attorney abandonment might have merited would have ended no later than December 3, 2007, when Hill resumed litigating his claims. In other words, even if Hill were entitled to tolling because of attorney abandonment, his petition would still be untimely under AEDPA.

Hill has argued that the untimeliness of these later petitions is attributable to Uebbing's earlier errors, Hill's poverty, and Hill's *pro se* status, and invites the Court to re-examine the timeliness determinations in light of this. Hill's proper course of action, however, would have been to explain to the state courts why his petitions should have been considered timely. Instead, he sandbagged, referring in summary fashion in some petitions to attorney abandonment, and not mentioning it at all in others. His obligation to explain his late filing was particularly acute because he was given actual notice that each petition was being denied as untimely. Had he properly presented his explanation to them, and persuaded them to treat his petitions as timely, he would be in an entirely different position.

But in any event, the Court cannot re-examine these issues. The Supreme Court has made clear that the state court's determination is the final word. "[A] state postconviction petition rejected by the state court as untimely is not 'properly filed' within the meaning of § 2242(d)(2)." *Allen v. Siebert*, 552 U.S. 3, 5 (2007) (citing *Pace*, 544 U.S. at 414). "When a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)." *Id.* at 7 (internal quotation marks and alteration omitted).

In short, even assuming Hill was entitled to tolling from February, 2006, when Uebbing was hired, until December, 2007, when he filed his *pro se* petition in the California Supreme Court, he is not entitled to tolling from March 26, 2008 to June 15, 2009. Even assuming
/ / /

AEDPA's one-year limitations period had not lapsed before, it expired on March 26, 2009, rendering his federal petition untimely by over two months.

**Conclusion and Order**

The Court concludes that its rejection of Hill's actual innocence claim was correct, and finds no reason to reconsider that determination. The proposed new evidence does nothing to help Hill surmount the high standard for actual innocence set forth in *Schlup*.

Hill has also failed to carry his burden to establish entitlement to tolling because of attorney abandonment. First, the Court finds he was not abandoned, but maintained communication with his attorney, and knew what his attorney was doing. Second, Hill failed to show that the 17-month delay was caused by anything more serious than attorney negligence — which, as a matter of law, is insufficient to entitle him to tolling. Third, even if Hill were entitled to tolling during the "abandonment" period, his petition would still be time-barred by over two months.

The petition is **DENIED**, and the Clerk is directed to enter judgment in favor of Respondent. To the extent the Court is required to determine whether a certificate of appealability should issue, the certificate is **DENIED**.

**IT IS SO ORDERED**.

DATED: February 23, 2015

Larry A. Burns

**HONORABLE LARRY ALAN BURNS**
United States District Judge